IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MELINDA DEITER and JOHN DEITER, | : |
| Plaintiffs, | : |
| v. | : JURY TRIAL DEMANDED |
| CITY OF WILKES-BARRE and FRANK KRATZ, | : No.   3-16-cv-132-RDM |
| Defendants, | : |
| and | : |
| STELL ENTERPRISES, INC. and ROBERT STELLA, | : |
| Additional Defendants. | : |

PLAINTIFFS' BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

DYLLER & SOLOMON

/s/ Barry H. Dyller, Esq.
Tara G. Giarratano, Esq.
Attorneys for Plaintiffs
88 North Franklin Street
Wilkes-Barre, PA 18701
(570) 829-4860

Plaintiffs John Deiter and Melinda Deiter, by and through their attorneys, Barry H. Dyller, Esq. and Tara G. Giarratano, Esq., of Dyller & Solomon, LLC, submit this brief in support of Plaintiffs' Motion for Summary Judgment.

## **INTRODUCTION**

Wilkes-Barre City knew that Frank Kratz was tear-down happy. Kratz was proud of his demolish first, think later attitude: in an email to a superior who had warned him not to tear down a fire-damaged home, Kratz replied "You snooze you lose." Despite Kratz's cavalier attitude, the City never effectively disciplined him and thus emboldened him to repeatedly demolish homes without notice or other due process.

Kratz's words accurately portray the City's position in this case. Faced with multiple opportunities to discipline Kratz for prematurely tearing down fire-damaged homes, the City snoozed; Melinda Deiter and John Deiter lost.

Plaintiffs' case presents additional twists: Kratz ordered the demolition of plaintiffs' property two days before it was inspected by a structural engineer; Kratz colluded with demolition contractor Stell Enterprises Incorporated ("SEI") and Robert Stella, also defendants, to fraudulently cancel utilities to the property in the name of John Deiter;

1

defendants agreed that SEI and Stella would apply for and obtain a building permit to demolish the property in John Deiter's name.

Plaintiffs are not Kratz's first, second, or third victims. The loss suffered by John Deiter is monumental. The elderly Mr. Deiter lost not only his home of more than forty years, but also his lifetime of possessions. The emotional toll suffered by plaintiffs is great, as is all of the defendants' recklessly indifferent conduct.

While Kratz boasted that his frequent *Loudermill* hearings were "for nothing," this case is about something. It is about the financial and emotional losses suffered by plaintiffs; it is about Kratz's callousness toward people and toward their constitutional rights; and it is about Wilkes-Barre City's knowledge of Kratz's regular violation of constitutional rights and decision to keep him in a position in which he could and did continue to violate constitutional rights and demolish properties without due process to owners or occupants.

## **STATEMENT OF FACTS**

The facts of record are contained in plaintiffs' accompanying statement of facts pursuant to LR 56.1. Below is a summary.

On November 15, 2015, Richard Zimmerman returned to plaintiffs' double block home which he was in the process of remodeling. Mr.

Zimmerman found that the rear right side of the home was on fire. The fire department was called and extinguished the fire. When Ms. Deiter arrived at the scene of the fire, the Wilkes-Barre City fire chief told Ms. Deiter: "Everything is, you know, looking pretty good. You know, it's not that bad….The good thing is you have a fire wall in between….The other half [the left side, where Mr. Deiter lived], you know, shouldn't have smoke damage or anything like that." Ms. Deiter exchanged contact information, including her address and phone number, with the fire chief. (Plaintiffs' SOF, ¶¶ 7-8).

Defendant Frank Kratz was a Building Code Official employed by Defendant City of Wilkes-Barre. Kratz was authorized to deem buildings unsafe and call for their demolition, but before authorizing a demolition he was required to confirm with the Fire Inspector that the Fire Department had concluded its investigation into the cause of the fire. (Plaintiffs' SOF, ¶¶ 11-12). However, Kratz had a well-documented history of prematurely ordering the demolition of fire-damaged homes. This history was known to the City. (Plaintiffs' SOF, ¶¶ 13-18).

Even though a structural engineer did not inspect the home until November 18, 2015, on November 16, 2015, Kratz had already contracted to have the home demolished. (Plaintiffs' SOF, ¶¶ 28-29). Despite Ms.

Deiter's phone number being in the possession of the Fire Chief and Kratz himself (she had left him multiple voice messages), Kratz chose not to notify Ms. Deiter that he planned to demolish her property. On November 18, 2015, after the demolition had already begun, Kratz returned Ms. Deiter's calls, only to tell her that it was too late. (Plaintiffs' SOF, ¶ 32).

## ARGUMENT

## POINT ONE

### The Undisputed Facts Demonstrate that Defendant Kratz Deprived Plaintiffs of Property Without Due Process of Law

"A plaintiff asserting the deprivation of procedural due process rights 'must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law.'" *Munoz v. City of Union City*, 481 Fed. Appx. 754, 757 (3rd Cir. 2012) (*citing Hill v. Borough of Kutztown,* 455 F.3d 225, 234 (3d Cir. 2006)). "Procedural due process requires the state to give notice and an opportunity to be heard before taking a person's property." *Philly Auto Inc. v. City of Philadelphia*, 362 F.Supp.3d 272, 278 (E.D. Pa. 2019) (*citing Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982)).

Ms. Deiter was Denied her Right to Pre-Deprivation Notice

"Notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Philly Auto Inc.*, 362 F.Supp.3d at 278 (*citing Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). On the scene of the fire, the Fire Department learned that Ms. Deiter was the owner of the Marlborough Avenue property and obtained her phone number, but Kratz never attempted to learn this information from the Fire Department. (Plaintiffs' SOF, ¶¶ 10; 31). Moreover, in the time between the fire and the demolition, Ms. Deiter called Kratz multiple times, leaving him messages identifying herself as the owner of the Marlborough Avenue property, yet Kratz chose to not give Ms. Deiter notice of any kind that he planned to demolish her property. (Plaintiffs' SOF, ¶¶ 27; 32).

Ms. Deiter was Denied her Right to a Pre-Deprivation Hearing

"While a due process hearing ordinarily should occur before an individual is deprived of his property, 'in special circumstances, a state may satisfy the requirements of procedural due process merely by making available "some meaningful means by which to assess the propriety of the State's action at some time after the initial taking."'" *Munoz*, 481 Fed. Appx. at 758 (*citing Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412,

5

417 (3d Cir.2008)). "Where there is 'the necessity of quick action by the State,' or where 'providing any meaningful predeprivation process' would be impractical, the Government is relieved of the usual obligation to provide a predeprivation hearing." *Id.*

But where an official's determination of emergency is not reasonable or made in good faith, but instead arbitrary or an abuse of discretion, a predeprivation hearing is required: "we cannot apply so much deference as to allow 'the government [to] avoid affording due process to citizens by arbitrarily invoking emergency procedures.'" *Id.* at 418 (*citing Catanzaro v. Weiden,* 188 F.3d 56, 62-63 (2d Cir.1999)). The Third Circuit adopted the Second Circuit's test for evaluating an official's decision that emergency action is required: "'where there is competent evidence allowing the official to reasonably believe that an emergency does in fact exist ... [,] the discretionary invocation of an emergency procedure results in a constitutional violation only where such invocation is arbitrary or amounts to an abuse of discretion.'" *Id.* Further, "'the rationale for permitting government officials to act summarily in emergency situations does not apply where the officials know no emergency exists, or where they act with reckless disregard of the actual circumstances.'" *Armendariz v. Penman,*

31 F.3d 860, 866 (9th Cir.1994), *quoted with approval by, Elsmere Park Club, L.P.*, *supra*, 542 F.3d at 418.

Kratz's decision that emergency action was required at the Marlborough Avenue property was made with reckless disregard of the actual circumstances and constituted an abuse of discretion. Kratz justified his emergency decision with a report prepared by a structural engineer. The engineer's written report (Plaintiffs' Exhibit 18) identifies **November 18**, 2015 as the day the engineer who recommended demolition inspected the property: however emails[1] (Plaintiffs' Exhibits 2-3) between Kratz and Stella (defendant demolition contractor) reveal that Kratz had already decided to demolish the property on **November 16**, 2015, two days before inspection of the property. (Plaintiffs' SOF, ¶¶ 28; 35-36). Thus, Kratz's decision to demolish the property was made without any reasonable basis -- the engineer did not even purport to inspect the property until two days later. No official would consider Kratz's decision reasonable when the undisputed evidence demonstrates that that decision totally lacked supporting evidence. It is difficult to imagine a clearer example of an official making a decision of emergency in reckless disregard of the actual circumstances.

---

[1] These emails were produced pursuant to a subpoena sent to then-nonparty Stell Enterprises Incorporated. They were never produced by Wilkes-Barre City or Kratz during discovery.

7

Thus, under Third Circuit law as enumerated in *Elsmere Park Club, L.P.*, 542 F.3d at 418, notice and a pre-deprivation hearing was required.

Where a municipality is faced with circumstances in which it is required to provide a pre-deprivation hearing, no amount of post-deprivation process can cure the municipality's failure to provide a pre-deprivation hearing. *Id.* at 417 (*citing Zinermon v. Burch,* 494 U.S. 113, 132 (1990). "'[I]f the Constitution requires pre-termination procedures, the most thorough and fair post-termination hearing cannot undo the failure to provide such procedures.'" *Id.* (*citing Alvin v. Suzuki,* 227 F.3d 107, 120 (3d Cir.2000)).

There is no issue of material fact. Kratz and Wilkes-Barre City deprived Melinda Deiter and John Deiter of the Marlborough Avenue property without due process of law in violation of the Fourteenth Amendment.

## POINT TWO

### The Undisputed Facts Demonstrate that Defendant Kratz Effected a Taking of Plaintiffs' Property Without Compensation

"'The Takings Clause of the Fifth Amendment prohibits the federal government from taking private property for public use without providing just compensation.' *Am. Express Travel Related Servs., Inc. v. Sidamon–Eristoff,* 669 F.3d 359, 370 (3d Cir. 2012) (citing U.S. Const. amend. V).

This applies with equal force through the Fourteenth Amendment where the state is the government actor. *Id.*" *Munoz*, 481 Fed. Appx. at 759.

To make out a takings claim, a plaintiff must demonstrate that the government took property without just compensation. *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194 (1985). "A Takings Clause claim cannot lie where the plaintiff was not deprived of all beneficial uses of his property." *Munoz*, 481 Fed. Appx. at 759 (*citing Andrus v. Allard*, 444 U.S. 51, 65–66 (1979).

Plaintiffs have demonstrated that Wilkes-Barre City took their home on Marlborough Avenue without receiving any monetary compensation in return. Additionally, Plaintiffs have been totally deprived of all beneficial use of the property—the land is too narrow to build on and therefore has negative value.

There is no issue of material fact relating to Kratz's and Wilkes-Barre City's taking of the property in violation of the Fourteenth Amendment.

# POINT THREE

## The Undisputed Facts Demonstrate that Defendant Kratz Effected an Unreasonable Seizure of Plaintiffs' Property

"A seizure of property…occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Soldal v. Cook County, Ill.*, 506 U.S. 56, 61 (1992) (*citing United States v. Jacobsen,* 466 U.S. 109, 113 (1984)). "In addition, we have emphasized that 'at the very core' of the Fourth Amendment 'stands the right of a man to retreat into his own home.'" *Soldal*, 506 U.S. at 61. "Demolition of a partially collapsed structure located on Plaintiff's property constitutes a seizure within the meaning of the Fourth Amendment." *Fisher v. Pratt*, No. 19-273, 2020 WL 773262, at *7 (D. N.J. Feb. 18, 2020) (*citing Gariffo Real Estate Holdings Co. v. City of Philadelphia*, No. 05-6153, 2007 WL 1410607 *4, 2007 U.S. Dist. LEXIS 35071 *12 (E.D. Pa. May 11, 2007).

Reasonableness is the "ultimate standard" under the Fourth Amendment, thus, to prevail on a seizure claim, a plaintiff must prove that the government unreasonably seized property. *Soldal*, 506 U.S. at 71.

In *Bullard v. City of Philadelphia*, 847 F. Supp.2d 711, 721 (E.D. Pa. 2012), the Court held that, where there was an issue of material fact relating to whether an official's demolition decision was made arbitrarily or amounted to an abuse of discretion, there was also an issue of material

fact relating to whether the government's seizure of property was unreasonable.

Conversely, where, as here, there is no issue of material fact relating to whether an official's demolition decision was made arbitrarily or amounted to an abuse of discretion, there also cannot be an issue of material fact relating to whether the government's seizure of property was unreasonable.

Kratz decided to demolish the building immediately and immediately sprung to action to contract SEI and Stella to do so. Kratz did this without a professional inspection of the building. This was fundamentally unreasonable.

There is no issue of material fact relating to the unreasonableness of Kratz's and Wilkes-Barre City's seizure of the property. They thus violated plaintiffs' Fourth Amendment rights.

## POINT FOUR

### The Undisputed Facts Demonstrate Municipal Liability for the City of Wilkes-Barre under *Monell*

A municipality is not vicariously liable for its employees' constitutional violations, but it is liable for constitutional violations caused by its own policies or customs. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Regardless of municipal policy/custom, a

municipality is also liable if the injury was "caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'" *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019), *cert. denied*, 140 S.Ct. 902 (2020), *quoting Brown v. Muhlenberg Twp.,* 269 F.3d 205, 215 (3d Cir. 2001). These are two separate and distinct ways to establish municipal liability, although the facts can, but need not, support both avenues of liability. *Forrest*, 930 F.3d at 106.

City of Wilkes-Barre is liable under the second of these avenues.

The undisputed facts demonstrate that a decisionmaker with policymaking authority for Wilkes-Barre City acquiesced to Kratz's repeated course of unconstitutional conduct such that a governmental custom sufficient for liability under *Monell* was established. The evidence is undisputed that Wilkes-Barre City had knowledge of and acquiesced to Kratz's history of both prematurely authorizing the demolition of homes and of failing to exercise reasonable diligence in notifying property owners prior to demolition. (Plaintiffs' SOF, ¶¶ 13-18; 21).

Kratz's actions in denying Ms. Deiter her constitutional right to notice was pursuant to Wilkes-Barre City's custom of not requiring sufficient notice to property owners: beyond sending a notice via mail, Kratz was "not

require[d] to make additional efforts to contact and notify the owner of a property before it's taken down." (Plaintiffs' SOF, ¶ 21).

Despite subjecting Kratz to numerous and frequent *Loudermill* hearings, the City repeatedly chose not to discipline Kratz for his acts of misconduct, thereby acquiescing to his past misconduct and encouraging future misconduct. (Plaintiffs' SOF, ¶¶ 22-25 ). In Kratz's own words, his *Loudermill* hearings were "for nothing." (Plaintiffs' SOF, ¶ 22). Ultimately, Wilkes-Barre City's repeated and conscious choice to not discipline Kratz, signaled to him that there would be no consequences for future misbehavior involving the demolition of homes without notifying property owners prior to demolition. Through its custom of acquiescence to Kratz's unconstitutional conduct, Wilkes-Barre City was deliberately indifferent to the constitutional rights of plaintiffs.

There is no issue of material fact relating to Wilkes-Barre City's custom of prematurely demolishing fire-damaged homes and permitting Kratz to continue to order such demolitions without meaningful consequence.

## POINT FIVE

**The Undisputed Facts Demonstrate that Defendant
Kratz Committed the Intentional Tort of Conversion**

"Conversion occurs when a party deprives the owner from his right of or use of or possession of a chattel, without the owner's consent and without lawful justification." *Montgomery v. Federal Ins. Co.*, 836 F. Supp. 292, 300 (E.D. Pa. 1993) (*citing Shonberger v. Oswell*, 530 A.2d 112, 114 (Pa. Super. 1987). "Courts do not require the actor to have specific intent, rather, any intent to assert dominion or control over the chattel that is inconsistent with the owner's right is sufficient." *Id.*

Kratz deprived plaintiffs of the right or use of John Deiter's lifetime of personal possessions when he contracted on behalf of Wilkes-Barre City to declare that all salvage was to become the property of demolition contractor SEI.

There is no issue of material fact relating to Kratz's and Wilkes-Barre City's conversion of plaintiffs' property.

## CONCLUSION

The undisputed facts show that:

A.    Defendants gave no notice to plaintiffs that they intended to demolish Melinda Deiter's property/John Deiter's home;

B. The day after the fire Kratz set the demolition in motion;

C. An inspection by a structural engineer was conducted only after the demolition was completed or in progress;

D. Multiple machinations were engaged in, including false documents submitted to make it appear that plaintiff John Deiter requested a demolition permit and that John Deiter made requests to utility companies;

E. Defendants falsely used demolition contractor SEI's address, claiming that it was John Deiter's address on such false documents;

F. Kratz's history of prematurely demolishing fire damaged homes is well documented and was well known to the City. Yet the City's affirmative decision, made repeatedly, to allow Kratz to continue with such misconduct constituted a custom which was a cause of the process-less demolition.

Plaintiffs respectfully request judgment be entered in their favor against defendants Frank Kratz and City of Wilkes-Barre.

DYLLER & SOLOMON

/s/ Barry H. Dyller, Esq.
Tara G. Giarratano, Esq.
Attorneys for Plaintiffs
88 North Franklin Street
Wilkes-Barre, PA 18701
(570) 829-4860